WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Constance Ann Maynard,       )
                             )
            Plaintiff,       )      No. CIV 04-0525 PHX RCB
                             )
        vs.                  )            O R D E R
                             )
CNA Group Life Assurance     )
Company, et al.,             )
                             )
            Defendants.      )
_____)

      On June 8, 2005, Defendants CNA Group Life Assurance Company
("CNA"), et al., filed a Motion for Summary Judgment in this
matter.[1] Motion for Summ. Judg. (doc. 72). Plaintiff Constance Ann
Maynard filed her response to this motion on August 22, 2005. Resp
(doc. 77). Thereafter, on October 11, 2005, Defendants filed a
motion to strike certain exhibits filed by Plaintiff. Mot. to

_____

      [1] On December 22, 2005, the parties in this matter filed a
Stipulated Motion for Leave to Amend Complaint to Add Additional
Party. Motion for Leave to Amend (doc. 105). This motion requests
that Hartford Life Group Insurance Company ("Hartford") be added as
a defendant in this case. Id. The Court shall grant this motion and
deem this order to apply to all defendants in this matter, including
Hartford.

Strike (doc. 92). Then, on October 17, 2005, Plaintiff filed a motion for leave to file the Supplemental Declaration of Constance Ann Maynard and the Declaration of Stuart H. Sandhaus. Mot. for Leave to File (doc. 95). In addition, Plaintiff filed a request for judicial notice. Request Jud. Not. (doc. 98). These motions were fully briefed on November 3, 2005, and Defendants' motion for summary judgement was argued orally on December 19, 2005. Reply to Mot. to Strike (doc. 103).

**I. Background Facts**

Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff has sued for long-term disability ("LTD") insurance benefits under an employee welfare benefit plan ("Hewitt Plan") provided by her employer, Hewitt Associates, L.L.C. The Hewitt Plan purchased LTD insurance coverage through Continental Casualty Company and CNA Group Life Assurance Company (collectively "CNA") under policy #SR83100971 ("Policy"). The Policy became effective February 1, 1997, but was amended on January 1, 2001, granting CNA discretionary authority to determine claims as of January 1, 2001 ("Policy-2"). DSOF (doc. 73) at Exbt. B.

Plaintiff worked for Hewitt Associates, L.L.C. as a Measurement Consultant. The primary function and components of her job were "[m]arketing of various surveys, including telemarketing and assisting in the coordination of marketing materials to clients." Exbt. C (doc. 73). Plaintiff's position required no heavy or manual labor, and she was expected to work with a computer, telephone, and a calculator. Id. She typically lifted or carried business materials weighing less than ten (10) pounds. Id.

1    On July 5, 2000, Plaintiff stopped working at Hewitt due to an
2    alleged disability, and, thereafter, submitted a claim to CNA for
3    LTD benefits. To demonstrate that an insured was disabled under
4    Policy-2, evidence must indicate that the claimant was
5    "continuously unable to perform the Material and Substantial
6    Duties" of his or her regular occupation. Exbt. B (doc. 73) at 7.
7    "Material and Substantial Duties" means "the necessary functions of
8    [the insured's] Regular Occupation which cannot be reasonably
9    omitted or altered." Id. at 16. "Regular Occupation" means "the
10   occupation that [the insured is] performing for income or wages" on
11   the date of the insured's disability. Id.
12   CNA reviewed Plaintiff's physical job requirements and the
13   medical records provided by Plaintiff's healthcare providers dating
14   back to June of 1999. CNA sent these documents to Dr. Eugene
15   Truchelut, an independent physician, board certified in internal
16   medicine. On or about April 24, 2001, Dr. Truchelut opined that
17   Plaintiff's medical records did not indicate an inability to
18   perform sedentary work activities. Exbt. E (doc. 30) at 5.
19   On June 7, 2001, CNA denied Plaintiff's claim for LTD
20   insurance coverage. After CNA denied Plaintiff's claim for LTD
21   benefits, she exercised her right to appeal CNA's decision and
22   submitted additional documents to CNA. On or about January 18,
23   2002, the appeals committee made a determination that Plaintiff was
24   not disabled under the plan and affirmed CNA's earlier decision.
25   Plaintiff, thereafter, filed this lawsuit. Complaint (doc. 1).
26   **III. Defendants' Motion to Strike**
27   Defendants ask the Court to strike numerous documents filed by
28   Plaintiff in support of her opposition to Defendants' motion for

1  summary judgment. Mot. to Strike (doc. 92). Specifically,

2  Defendants move to strike (1) the Declaration of Constance Ann

3  Maynard ("Maynard Declaration"); (2) Exhibit A to the Maynard

4  Declaration; (3) Exhibits A, M, O, P, Q, R, S, T, U to the

5  Declaration of Stuart H. Sandhaus ("Sandhaus Declaration"); (4) the

6  Declaration of Daniel L. Peterson, M.D. ("Peterson Declaration");

7  (5) Exhibits A, B and G to the Peterson Declaration; (6) the

8  Declaration of Sheila P. Bastien, Ph.D. ("Bastien Declaration");

9  (7) Exhibits D, E, G and H to the Bastien Declaration; and (8)

10  Plaintiff's Controverting Statement of Facts in Opposition to

11  Defendants' Motion for Summary Judgment, ¶¶ 7, 40-50. Id. at 1-2.

12  Defendants assert that all of these documents were produced after,

13  or are based upon documents produced after, CNA denied Plaintiff's

14  ERISA appeal, thus, they are not part of the administrative record.

15  Id. at 2. For this reason, Defendants request that the documents be

16  stricken. Id. at 2-3.

17      In contrast, Plaintiff argues that the contested documents

18  should not be stricken, because they are either part of the

19  administrative record or based upon documents that are part of the

20  administrative record. Resp. to Mot. to Strike (doc. 97) at 3-5.

21  First, Plaintiff's argument centers around evidence that was

22  submitted to Defendants after January 18, 2002, when the appeals

23  committee made its determination and affirmed CNA's earlier

24  decision to deny Plaintiff's claim for LTD benefits. Id. at 3.

25          "After Defendant CNA, who acted as the claims
            administrator, denied Plaintiff's benefits on
26          January 18, 2002, Plaintiff filed an appeal with
            the Plan Administrator/Fiduciary, Defendant
27          Hewitt. Both Defendant CNA and Hewitt thereafter
            accepted, reviewed, and considered additional
28          evidence in support of Plaintiff's claim for LTD

1  benefits."

2  Id. Apparently, Plaintiff believes that she filed and Defendants

3  reviewed a "second" appeal of her claim that occurred after January

4  18, 2002. However, Plaintiff herself notes that CNA, in its letter

5  of January 14, 2003, in response to Plaintiff's submission of

6  additional evidence after January 18, 2002, stated "[t]here are no

7  further appeal reviews available." Id. at 4. In addition, Plaintiff

8  points out that Defendant Hewitt, in its response letter, stated,

9  "Ms. Maynard has exhausted all of her administrative

10 remedies...[and] [s]he may now pursue any available remedies in

11 court should she decide to do so." Id. The Court notes that

12 Defendant Hewitt in this letter also stated "CNA provided you with

13 a five-page final determination of benefits in which CNA advised

14 that Ms. Maynard's administrative record was closed and the

15 decision was final and binding." Sandhaus Declaration (doc. 81) at

16 Exbt. U.

17      Second, Plaintiff asserts that the documents should not be

18 stricken, because they are "based upon documents that are part of

19 the administrative record[.]" Resp. to Mot. to Strike (doc. 97) at

20 4. In support of this assertion, Plaintiff again argues that

21 Defendants reviewed the contested documents during the alleged

22 "second" appeal. Id. at 5. Plaintiff admits that the contested

23 information was "reviewed" by Defendants after the January 18, 2002

24 appeal decision. Id. ("The 'information' reviewed by Defendant CNA

25 included updated medical reports from treating and consulting

26 medical providers and rebuttal reports in response to documentation

27 that was provided to Plaintiff as enclosures with Defendant CNA's

28 letter of February 28, 2002."). However, Plaintiff argues that by

- 5 -

1  merely stating that they "reviewed" Plaintiff's correspondence or
2  by referencing the additional materials in their response letters,
3  Defendants automatically made the additional evidence part of the
4  administrative record. Id. at 4-5. Plaintiff cites no authority to
5  support this assertion. Moreover, Plaintiff fails to show that any
6  of the contested evidence was considered by the plan administrator
7  in its initial denial of Plaintiff's LTD benefits or in its review
8  of her appeal.

9      In abuse of discretion cases, evidence outside the
10 administrative record is completely inadmissible. Newman v.
11 Standard Insurance Company, 997 F.Supp. 1276, 1280 (C.D. Cal.
12 1998). "Permitting a district court to examine evidence outside the
13 administrative record would open the door to the anomalous
14 conclusion that a plan administrator abused its discretion by
15 failing to consider evidence not before it." Taft v. The Equitable
16 Life Assurance Society, et. al, 9 F.3d 1469, 1472 (9th Cir. 1993).
17 The documents filed by Plaintiff and challenged by Defendants in
18 their motion to strike are not part of the administrative record.
19 Thus, the Court shall grant Defendants' motion and order the
20 documents stricken from the record.

21 **IV. Plaintiff's Motion for Leave to File and Request for Judicial**
22 **Notice**

23     Plaintiff moves the Court for leave to file the Supplemental
24 Declaration of Constance Ann Maynard and the Declaration of Stuart
25 H. Sandhaus. Mot. for Leave to File (doc. 95). In explaining her
26 reasoning for this request, Plaintiff notes that she has recently
27 suffered from ill-health and, "[u]ntil recently, [she] was simply
28 unable to assist counsel in preparing her more complete Declaration

1  in Support of the Opposition to Defendants' Motion for Summary

2  Judgment." Id. at 3. Plaintiff argues that this equals "excusable

3  neglect," and, under Federal Rule of Civil Procedure 6(b)(2), the

4  Court may allow the late submission of her complete declaration.

5  Id. In addition, Plaintiff requests that the Court take judicial

6  notice of certain settlement agreements involving Departments of

7  Insurance of forty-eight (48) states and UnumProvident. Request

8  Jud. Not. (doc. 98) at 1. Defendants ask the Court to deny

9  Plaintiff's motion due to the fact that the affidavits Plaintiff

10  seeks to introduce are not part of the administrative record. Resp.

11  to Mot. for Leave to File (doc. 100).

12      As noted above, in abuse of discretion cases, evidence outside

13  the administrative record is completely inadmissible. See Newman,

14  997 F.Supp. at 1280; Taft, 9 F.3d at 1472. Plaintiff, in her

15  motion, clearly states that the affidavits she seeks to file with

16  the Court are new. Mot. for Leave to File (doc. 95) at 3 ("Over the

17  course of the past several weeks, Plaintiff has been able to confer

18  with counsel and prepare a more comprehensive declaration, which

19  she hereby seeks leave to file."). Thus, such documents are not

20  part of the administrative record and are inadmissible in this

21  matter. The Court shall deny Plaintiff's motion. For the same

22  reason, the Court shall also deny Plaintiff's request for judicial

23  notice.

24  **V. Defendants' Motion for Summary Judgment**

25      **a. Summary Judgment Standard**

26      To grant summary judgment, the Court must determine that the

27  record before it contains "no genuine issue as to any material

28  fact" and, thus, "that the moving party is entitled to judgment as

a matter of law." Fed.R.Civ.P. 56(c).  In determining whether to
grant summary judgment, the Court will view the facts and
inferences from these facts in the light most favorable to the
nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986).

The mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue
of material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-48 (1986).  A material fact is any factual dispute that
might affect the outcome of the case under the governing
substantive law.  Id. at 248.  A factual dispute is genuine if the
evidence is such that a reasonable jury could resolve the dispute
in favor of the nonmoving party.  Id.

A party opposing a motion for summary judgment cannot rest
upon mere allegations or denials in the pleadings or papers, but
instead must set forth specific facts demonstrating a genuine issue
for trial.  See id. at 250.  Finally, if the nonmoving party's
evidence is merely colorable or is not significantly probative, a
court may grant summary judgment.  See, e.g., California
Architectural Build. Prods., Inc. v. Franciscan Ceramics, 818 F.2d
1466, 1468 (9th Cir. 1987).

**b. Standard of Review**

Typically, the standard of review to be applied by district
courts in reviewing challenged denials of ERISA benefits is "a de
novo standard[.]"  Firestone Tire & Rubber Co. v. Bruch, 489 U.S.
101, 115 (1989). However, when an ERISA administrator or fiduciary
is given discretionary authority to determine eligibility for

1  benefits or to construe plan terms, the proper review of a denial
2  of benefits is under an abuse of discretion standard. <u>See</u> <u>id.</u>;
3  <u>Ingram v. Martin Marietta Long Term Disability Income Plan for</u>
4  <u>Salaried Employees of Transferred GE Operations</u>, 244 F.3d 1109,
5  1112 (9th Cir. 2001).

6      In its Order of March 29, 2005, the Court concluded that, as a
7  matter of law, Policy-2 is the controlling document in this case.
8  Order (doc. 60). The parties did not dispute that the language
9  included in Policy-2 conferred discretionary authority upon CNA.[2]
10 Accordingly, the Court determined that the appropriate standard of
11 review in this matter is the abuse of discretion standard. <u>Id.</u> at
12 12.

13

───────────────────

14

15      [2] During oral argument, Plaintiff for the first time argued that
   Policy-2 does not contain a provision granting Defendant Hewitt the
16 right to delegate its "fiduciary responsibilities" to Defendant CNA.
   Oral Argument, December 19, 2005 at 11:23:56AM-11:25:01AM. Citing
17 <u>Winterstein v. Stryker Corporation Group Life Insurance Plan</u>, 2005 WL
   3149742 (9th Cir. 2005), Plaintiff asserted that this lack of
18 contract language requires that Defendants' denial of Plaintiff's
   benefits be subject to a de novo review. Oral Argument, December 19,
19 2005 at 11:24:29AM-11:25:01AM. The Court, however, finds Plaintiff's
   argument and reliance on <u>Winterstein</u> to be misplaced.
20      First, the Court notes that <u>Winterstein</u> is an unpublished case
   and, consequently, not binding precedent in this Circuit. Ninth
21 Circuit Rule 36-3. Second, the court in <u>Winterstein</u> stated that
   "CNA's benefits decision must be reviewed de novo unless the
22 Corporation's discretionary authority was properly delegated to CNA."
   2005 WL 3149742 at *1. This rule is no different from that defined
23 previously in this order or in the case law cited in support of such
   definition. Although the court in <u>Winterstein</u> went on to find that
24 discretionary authority had not been properly delegated to CNA, such
   a holding is not clearly relevant to this case. <u>Id.</u> To the extent
25 that Plaintiff seems to be arguing that this Court should reach the
   same conclusion because CNA was involved in both <u>Winterstein</u> and this
26 case, the Court notes that there is no evidence in the record that
   establishes any similarity between the contracts involved in
27 <u>Winterstein</u> and the case at bar. Accordingly, the Court finds that
   the holding in <u>Winterstein</u> raises no new issues in this matter.
28

1    The Ninth Circuit has held that ERISA plan administrators
2   "abuse their discretion if they render decisions without any
3   explanation, or construe provisions of the plan in a way that
4   conflicts with the plain language of the plan." Taft, 9 F.3d at
5   1472 (citing Eley v. Boeing Co., 945 F.2d 276, 279 (9th Cir. 1991)
6   and Johnson v. Trustees of W. Conference of Teamsters Pension Trust
7   Fund, 879 F.2d 651, 654 (9th Cir. 1989). In addition, "an
8   administrator also abuses its discretion if it relies on clearly
9   erroneous findings of fact in making benefit determinations." Taft,
10  9 F.3d at 1473; see Jones v. Laborers Health & Welfare Trust Fund,
11  906 F.2d 480, 482 (9th Cir. 1990).
12       **c. Analysis**
13            **1. Explanation of Denial of Benefits**
14       Courts have held that ERISA plan administrators "abuse their
15  discretion if they render decisions without any explanation[.]"
16  Taft, 9 F.3d at 1472. Here, it is not clear whether Plaintiff
17  alleges that Defendants abused their discretion by rendering a
18  decision denying her LTD benefits without any explanation. Although
19  Plaintiff, in her Response to Defendants' motion for summary
20  judgment, enumerates this allegation in a heading, she does not
21  contest the existence of an explanation, but ultimately argues that
22  Defendants' decision was erroneous. Resp. (doc. 77) at 7
23  ("Defendants provide *no* explanation or medical evidence as to why
24  it is discrediting the overwhelming medical evidence and opinions
25  of Ms. Maynard's treating and consulting medical providers that she
26  is disabled and is continuously unable to perform each of the
27  material duties of her regular occupation."). Plaintiff fails to
28  raise any specific argument alleging the complete absence of an

1  explanation. In fact, Plaintiff received a five-page explanation of
2  the plan administrator's decision. Thus, the Court concludes that
3  there exists no genuine issue as to any material fact in relation
4  to this issue.

5                    **2. Plain Language of the Plan**

6        Courts have also held that ERISA plan administrators abuse
7  their discretion if they "construe provisions of the plan in a way
8  that conflicts with the plain language of the plan." Taft, 9 F.3d
9  at 1472. Again, it is not clear to the Court whether Plaintiff
10  intends to allege that Defendants abused their discretion in this
11  manner.

12       In her Response, Plaintiff lists this allegation in a heading,
13  however she does not specifically argue how Defendants' decision
14  conflicted with the plain language of the plan. Resp. (doc. 77) at
15  9. Plaintiff instead asserts that Defendants breached their
16  fiduciary duties when they "secreted the alleged Policy-2 from the
17  beneficiary until after the administrative record was closed and
18  subsequent to the commencement of this litigation, knowing that
19  Plaintiff would not be able to perfect her claim under a policy
20  that contained material changes[.]" Id. at 10. The only specific
21  material changes that Plaintiff notes are "the terms for
22  establishing disability and the changing of the standard of
23  judicial review from de novo to abuse of discretion." Id. Plaintiff
24  does not, however, point to any evidence that indicates that
25  Defendants' denial of benefits conflicted with the plain language
26  of either plan. Regardless, the Court, in its Order of March 29,
27  2005, (doc. 60), concluded that Policy-2 is the controlling policy
28  in this matter, and Plaintiff has not shown the existence of any

genuine issue as to any material fact in relation to whether Defendants' decision was in conflict with the plain language of Policy-2.

### 3. Clearly Erroneous Findings of Fact

Lastly, an administrator may be found to have abused its discretion if it relies on clearly erroneous findings of fact in making benefit determinations. See Taft, 9 F.3d at 1473; see also Jones, 906 F.2d at 482. A fiduciary's decision will not be overturned where "there is substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" Snow v. Standard Ins. Co., 87 F.3d 327, 332 (9th Cir. 1996) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994). "Abuse of discretion" means the entire record leads to the firm conviction that a mistake has been made by the plan administrator. See Boyd v. Bert Bell/Pete Rozell NFL Players Retirement Plan, 410 F.3d 1173, 1179 (9th Cir. 2005). However, "even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." Taft, 9 F.3d at 1473-74.

Here, Plaintiff argues that Defendants' decision to deny her benefits was clearly erroneous because she provided substantial evidence indicating that she is disabled from Chronic Fatigue Syndrome ("CFS"). Resp. (doc. 77) at 4.[3] "The administrative record

---

[3] Plaintiff also raises an argument that Defendants breached their fiduciary duties to Plaintiff, thus making their decision an abuse of discretion. Resp. (doc. 77) at 9, 10. However, beyond a mere

1    contains a plethora of evidence establishing that Plaintiff is

2    disabled from CFS. (SOF ¶¶ 12, 13, 15, 21)." Id.  Plaintiff argues

3    that her "treating and consulting healthcare providers were

4    unanimous in their findings that Plaintiff was severely disabled by

5    debilitating Chronic Fatigue Syndrome." Id. at 11-12.[4] Moreover,

6    Plaintiff notes that she "received the maximum amount of Short Term

7    Disability benefits from Defendant Hewitt, and was approved for

8    benefits by the Social Security Administration." Id. at 12.

9    Plaintiff asserts that once she submitted sufficient evidence to

10   support her claim, it became Defendants' burden to produce

11   "sufficient substantial evidence to establish that the CFS

12   diagnosis was erroneous...and that Plaintiff was not disabled from

13   CFS." Id. at 5. Although Plaintiff does not cite any authority that

14   supports her burden-shifting argument, she contends that Defendants

15   failed to fulfill this burden. Id. "Without affirmative evidence

16   that Plaintiff was not disabled by CFS, it can only be concluded

17   that Defendants [sic] denial of benefits was erroneous." Id.

18        In addition, Plaintiff argues that the review of her medical

19   record was biased and incomplete. Resp. (doc. 77) at 11.

20   Specifically, Plaintiff notes that Dr. Truchelut (1) never examined

21   Plaintiff; (2) never contacted Plaintiff's treating and consulting

22   healthcare providers to discuss her "complex and debilitating

23   illnesses"; (3) never requested that Plaintiff submit to an

24

25   _____
     statement of this assertion, Plaintiff fails to argue or cite any
26   authority that supports this claim.

27        [4] Although it is not specified in her Response, Plaintiff seems
     to designate Daniel L. Peterson, M.D. and Sheila P. Bastien, Ph.D. as
28   her "treating and consulting healthcare providers."

1   Independent Medical Examination; (4) and there was no peer review

2   conducted on any of the submitted medical documentation and

3   reports. Id. Plaintiff also argues that Dr. Truchelut failed to

4   review and consider certain medical reports prepared by Dr.

5   Peterson and Dr. Bastien. Oral Argument, December 19, 2005 at

6   11:27:59AM-11:30:59AM.

7       In support of her arguments, Plaintiff mainly relies on the

8   decision in Camerer v. Continental Casualty Co., 76 Fed. Appx. 837

9   (9th Cir. 2003). The Court notes that Camerer is an unpublished

10  case and, therefore, is not binding precedent in this Circuit. Id.

11  at 839.[5] In any event, Plaintiff's reliance on Camerer is

12  misplaced.

13      In Camerer, a former employee sued his employer's group plan

14  administrator following the denial of disability benefits under an

15  ERISA-governed welfare benefits plan. Id. The court affirmed the

16  District Court's award of disability benefits to the plaintiff,

17  finding that the plan administrator had abused its discretion. Id.

18  The court in Camerer did not determine the standard of review that

19  should have been applied, but instead stated that the plan

20  administrator abused its discretion under any standard. Id.

21  Camerer's occupation involved the manipulation of heavy steel beams

22  surrounded by fast moving blades, and his medical records showed

23  that he suffered the effects of a traumatic brain injury, causing

24  him to have impaired visual-motor coordination, impaired memory,

25

26      [5] "Unpublished dispositions and orders of this Court are not

27  binding precedent, except when relevant under the doctrine of law of
    the case, res judicata, and collateral estoppel." Ninth Circuit Rule

28  36-3.

1   and difficulties with attention and retaining newly-acquired

2   information. Id. Pointing out that the plan administrator's denial

3   letters failed to acknowledge any of these neurological impairments

4   and misunderstood critical facts in relation to Camerer's claim,

5   the court determined that the plan administrator abused its

6   discretion. Id. at 840. Such an extreme case is not on par with the

7   matter that stands before this Court.

8        In the instant case, Plaintiff does not dispute that the

9   medical records submitted to Defendants include inconsistencies

10  regarding the status of her alleged disability and diagnosis. Resp.

11  (doc. 77) at 3-4. Plaintiff only challenges the weight Defendants

12  placed on such inconsistencies in making their final decision.

13  Defendants, however, were not required to give deference to

14  Plaintiff's treating physician's opinion or provide specific

15  reasons for rejecting his opinion. See Black & Decker Disability

16  Plan v. Nord, 538 U.S. 822, 834 (2003). Moreover, the decision is

17  not automatically deemed arbitrary and capricious because

18  Defendants did not consider or find dispositive the fact that

19  Plaintiff was approved for benefits by the Social Security

20  Administration. See Madden v. ITT Long Term Disability Plan for

21  Salaried Employees, 914 F.2d 1279, 1285 (9th Cir. 1990). Finally,

22  Plaintiff fails to cite, nor can the Court find, any authority

23  indicating that Defendants were required to examine Plaintiff in

24  person, contact Plaintiff's treating and consulting healthcare

25  providers to discuss her "complex and debilitating illnesses,"

26  request that Plaintiff submit to an Independent Medical

27  Examination, or have a peer review conducted on the submitted

28  medical documentation and reports.

In making its initial decision denying Plaintiff's claim for LTD benefits, Defendant CNA considered the report and analysis of Dr. Truchelut. Exbt. D (doc. 73). In his report, Dr. Truchelut notes Dr. Peterson's diagnoses of CFS and other ailments. Id. at 5. In addition, Dr. Truchelut lists Dr. Peterson's conclusions that Plaintiff was incapable of sustained lifting, standing or walking for more than two hours per day, and that, due to cognitive dysfunction, Plaintiff had difficulty with concentration and completion of tasks. Id. However, despite these opinions, Dr. Truchelut found that Plaintiff's medical record did not support a finding that Plaintiff was unable to perform sedentary work activities. Id.

In support of this conclusion, Dr. Truchelut specifically points out that at the time Plaintiff stopped working, her "physical examination was fairly benign, and laboratory studies prior to that were generally negative." Id. The report itself includes numerous references to Plaintiff's medical record where the evident status of her medical conditions conflict. Exbt. E (doc. 73). Dr. Truchelut cites on at least twenty-eight occasions in his report that Plaintiff's exams or test results were "within normal limits", "negative", "described as normal", "unremarkable", or "benign". Id. Finally, Dr. Truchelut notes that although Plaintiff's record showed that she had a poor tolerance to vigorous exercise, "it is generally accepted that sustained sedentary activity typically requires less that 5 mets, and [Plaintiff] went well beyond that." Id.

A similar analysis was conducted on Plaintiff's appeal. After Plaintiff appealed CNA's initial denial of benefits, she submitted

additional information regarding her claim. Exbt. F (doc. 73) at 1.
In its letter affirming the original decision in this matter, CNA
notes that it reviewed and considered all the information, "as well
as the psychological information presented by Dr. Bastien, but the
evidence does not support a functional loss or significant
deterioration that would preclude Ms. Maynard from continuously
performing the substantial and material duties of her regular
occupation[.]" Id. at 2. Again, CNA cites numerous inconsistencies
in Plaintiff's medical record, noting that most of her clinical
tests showed "benign", "negative", or "normal" results. Id. 2-3.
CNA acknowledges the abnormalities noted by Dr. Bastien in the
neuropsychological testing, but states that "this alone does not
substantiate Ms. Maynard's inability to continue working." Id. at
4. "The psychological testing and information presented does not
support a mental or emotional impairment that would preclude Ms.
Maynard from working." Id. at 4-5.

     Although Plaintiff asserts that Defendants failed to consider
certain medical "reports" produced by Dr. Peterson and Dr. Bastien,
she has not specifically indicated which "reports" she claims were
not reviewed and whether or not they are even part of the
administrative record. It is evident in Dr. Truchelut's report that
he reviewed and considered medical records produced by Dr.
Peterson. Exbt. D (doc. 73) (citing Dr. Peterson's notes and
findings in Plaintiff's medical records). Although, in his report,
Dr. Truchelut refers to medical "records" produced by Dr. Peterson
instead of "reports", it is not clear to this Court that Dr.
Truchelut was not referring to the same materials that Plaintiff
claims Defendants failed to review. Moreover, Plaintiff has not

1  shown that any reports produced by Dr. Bastien were submitted by
2  Plaintiff prior to Dr. Truchelut's review. Regardless, it is clear
3  from Defendants' letter denying Plaintiff's appeal that Dr.
4  Bastien's report was reviewed in reference to Plaintiff's appeal.
5  Exbt. F (doc. 73) (citing Dr. Bastien's notes and findings in
6  Plaintiff's medical records).

7       It is evident in the letters and reports described above that
8  CNA considered the evidence before it in making its decision to
9  deny Plaintiff's claim for LTD benefits. Plaintiff argues that
10 Defendants' disregard of her treating and consulting physicians'
11 opinions qualifies as an abuse of discretion. However, beyond the
12 conclusive statements of her doctors, Plaintiff does not specify
13 any clinical evidence in the record that clearly supports such
14 findings. More importantly, Plaintiff fails to raise any argument
15 that indicates that CNA based its decision on clearly erroneous
16 findings of fact. Thus, the Court finds no genuine issue as to any
17 material fact in existence in relation to this matter and concludes
18 that Defendants did not abuse their discretion. Defendants are
19 entitled to judgment as a matter of law.

20      Therefore,

21      IT IS ORDERED that the parties' Stipulated Motion for Leave to
22 Amend Complaint to Add Additional Party (doc. 105) is GRANTED.

23      IT IS FURTHER ORDERED that Defendants' Motion to Strike (doc.
24 92) is GRANTED. The following shall be stricken from the record:
25 (1) the Declaration of Constance Ann Maynard (doc. 80); (2) Exhibit
26 A to the Maynard Declaration (doc. 80); (3) Exhibits A, M, O, P, Q,
27 R, S, T, U to the Declaration of Stuart H. Sandhaus (doc. 81); (4)
28 the Declaration of Daniel L. Peterson, M.D. (doc. 82); (5) Exhibits

A, B and G to the Peterson Declaration (doc. 82); (6) the

Declaration of Sheila P. Bastien, Ph.D. (doc. 83); (7) Exhibits D,

E, G and H to the Bastien Declaration (doc. 83); and (8)

Plaintiff's Controverting Statement of Facts in Opposition to

Defendants' Motion for Summary Judgment, ¶¶ 7, 40-50 (doc. 78).

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to

File Supplemental Declaration of Plaintiff and Declaration of

Stuart H. Sandhaus in Support of Opposition to Defendant's [sic]

Motion for Summary Judgement (doc. 95) and Request for Judicial

Notice (doc. 98) are DENIED.

IT IS FINALLY ORDERED that Defendants' Motion for Summary

Judgment (doc. 72) is GRANTED. The clerk shall enter judgment and

terminate this case.

DATED this 10th day of January, 2006.


_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record